THE PEOPLE v. FERNÁNDEZ.

APPEAL from the District Court of San Juan.

No. 121.—Decided June 24, 1901.

CRIMINAL LAW—EVIDENCE OF GUILT—MATERIAL ERRORS.—Even where the evidence is sufficiently clear to justify the jury in finding the defendant guilty, if material errors have been committed during the course of the proceedings, the judgment must be reversed and a new trial granted.

ID.—REVIEW OF INSTRUCTIONS TO THE JURY—FAILURE TO ENTER EXCEPTION.— This court may review the instructions given to the jury even in the absence of exceptions thereto.

ID.—ERROR OF JUDGE IN INSTRUCTIONS TO THE JURY—FAILURE TO DESCRIBE IN BILL OF EXCEPTIONS THE TONE OF VOICE IN WHICH INSTRUCTIONS WERE GIVEN TO JURY.—Where the instructions of the judge to the jury are attacked on the ground that in the tone of voice of the judge there "vibrated the spirit of prejudice of the prosecutor which is so essentially different from the impartial spirit of a presiding judge" it is necessary to set forth in the bill of exceptions the facts and describe the tone of voice used in giving the instructions, in order that the court may determine whether or not the rights of the accused have been violated.

ID.—INTERRUPTION OF JUDGE WHILE CHARGING THE JURY—IMPROPER OBSERVATIONS MADE BY THE JUDGE.—In the case at bar the trial judge while instructing the jury was interrupted by counsel for the defendant to add the following statement: "I desire that the jury shall know the corresponding punishment" to which the judge replied: "Ten years," adding thereto the remark: "Surely the jury which is acting in this case is not frightened by the punishment." The court held that there is nothing in the law to justify such an improper interruption as that above set forth, which induced the judge to make such a remark, in violation of good taste and judicial decorum, and that it not appearing from the record that the rights of the accused were impaired, as she was sentenced to a punishment much less than the maximum authorized by law, that remark cannot be deemed to constitute a material error.

ID.—SUMMING UP EVIDENCE.—In accordance with the provisions of paragraph 3 of section 233 of the Code of Criminal Procedure, the judge is bound to relate the testimony of the witnesses to the jury and may comment upon the importance or value thereof.

ID.—INSTRUCTIONS AS A WHOLE CORRECT.—The fact that a certain paragraph of the instructions states a proposition in general terms, although immediately thereafter the exceptions to all the limitations thereof are stated, does not constitute error if such exceptions appear in any other part of the instructions.

ID.—ADMISSION AND EXCLUSION OF EVIDENCE—DIRECT EXAMINATION—CROSS EXAMINATION—APPLICATION OF THE LAW OF EVIDENCE TO CRIMINAL PROSECUTIONS.—In accordance with provisions of section 155 of the Law of Evidence, which must be followed in criminal prosecutions, when the same may be duly applied, the cross-examination must be confined to facts brought out on the direct examination.

ID.—AFFIDAVIT MADE IN A PRELIMINARY INVESTIGATION.—The provisions of section 423 of the Code of Criminal Procedure do not authorize the introduction as evidence of affidavits made by a witness in the course of a preliminary investigation of a crime, by the *fiscal*.

ID.—AFFIDAVITS OF DECEASED PERSONS.—*Ex parte* affidavits made before a notary public by deceased persons without the intervention of the *fiscal* and without giving him an opportunity to cross-examine them are not admissible in evidence and must be excluded.

ID.—QUESTIONS EXCLUDED—EXCEPTION.—In order that this court may review a ruling of a court excluding a question, it is necessary that such a ruling shall have been ·excepted to, and, in the absence of such an exception, it must be presumed that it is accepted.

The facts are stated in the opinion.

*Mr. López Landrón* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

The defendant in this case, Miss Felicia Fernández, was convicted in the District Court of San Juan, on the 11th of December, 1905, of the crime of perjury, and on the 20th day of the same month sentenced to two years' confinement in the penitentiary at hard labor and to pay a fine of $200 and all costs of the prosecution.

From this judgment she took an appeal to this court, and after many delays the case was argued and submitted on the 5th day of March, 1908, and since that time has had careful study and consideration. The Chief Justice, having been a witness in the case on the trial in the court below, excused himself and took no part in the decision. The four associate justices have each given patient attention to the details of the case, as presented in the record, and are unanimous in the decision reached.

The information presented, and on which the trial was had, has not been excepted to and is sufficient to support the prosecution and the judgment of the court. The proofs, set out in the statement of facts, justify the verdict of guilty found by the jury, and, although there are some contradictions of minor importance in the testimony, all the facts taken together leave no doubt in the mind that the accused committed the crime

with which she stands charged, and of which she was duly convicted, after a very strenuous defense and the interposition of every legal obstacle possible to prevent such a result. She was accused of perjury in denying under oath, in an affidavit made before the *fiscal* of the District Court of San Juan, on the 2d day of June, 1903, that she had signed a certain document, executed before the notary Tomás Valdejulli on the 4th day of July, 1895. It is not denied that she made the affidavit denying the signature appended to the deed. As was said in the brief, filed on her behalf, if she signed the document she is guilty, and if she did not sign it she is innocent. When the very voluminous record, consisting of 264 pages, is stripped of all irrelevant matter and the questions interwoven therein are untangled, this is the gist of the whole matter. The evidence that she really signed the document and afterwards denied having done so under oath is sufficiently strong to justify the jury in finding the guilt of the accused to have been proven beyond all reasonable doubt.

But even a guilty person is entitled, under our just and impartial laws, to a fair trial and to all the protection thrown around the humblest citizen by the legal forms prescribed for the protection of the innocent. So it is that if any substantial error has been incurred by the district court, in the course of the trial, the judgment must be reversed and a new trial granted, however much delay, trouble and expense it may involve. These are to be counted as nothing in comparison with the importance of securing to every person inhabiting this Island the equal and effective protection of the laws.

The crime of perjury is one of the most common, and at the same time one of the most dangerous, of all offenses known to our laws. It strikes directly at the foundations of justice, and tends to render abortive all efforts of the courts to administer the laws, and all exertions of the executive officers to carry out the statutes which the legislature enacts for the public benefit and the protection of organized society. It

should be relentlessly prosecuted and strictly punished, whenever it is detected and established to the satisfaction of the jury. Still no one, however great the crime may be of which he is accused, and however strong the proof of guilt may appear, as has been said before, should be convicted or punished except in strict conformity to the Code of Criminal Procedure which has been adopted to insure the equal, fair and impartial administration of justice.

Then let us examine the record presented in this case and ascertain whether or not any reversible error can be found therein of which the accused may receive the benefit.

First, let us review the charge of the court. No exception has been properly taken to it by the attorney for the defendant; but under our statute this is not necessary to secure a review of the charge by this court. It is the right of every defendant to have the law governing the case on trial properly presented and explained by the judge to the jury; and it is impossible to have a fair and impartial trial on an erroneous charge. In performing this duty the judge is entitled to all the assistance possible from counsel engaged in the case.

The charge is commented on and criticised in appellant's brief. The principal objection seems to be to the tones used by the judge in pronouncing his charge. It is said that therein there "vibrated the spirit of prejudice of the prosecutor which is so essentially different from the impartial spirit of a presiding judge." Of course it is impossible to ascertain, from the cold typewritten page of the record, what may have been the tones used by the judge in pronouncing his charge; and if they were such as to prejudice the rights of the defendant, that fact should have been made to appear by a bill of exceptions setting out the facts and describing the tones of the voice used in pronouncing the charge, and showing in what manner the rights of the accused were thereby violated. In the absence of such a showing it cannot be sup-

plied by unsupported statements in the brief filed on behalf of appellant.

A further adverse comment is made in the brief, upon the charge of the court, alleging that the counsel for the accused said to the presiding judge, while delivering the charge, "I desire that the jury shall know the corresponding penalty;" and that the judge replied, "ten years," adding thereto the remark, "surely the jury which is acting in this court is not frightened by the penalty." The trial judge having made this remark, it must be considered a violation of good taste and judicial decorum, probably induced by the very improper interruption interposed during the delivery of the charge.

The respect which is due to the trial judge, much less the courtesy which one gentleman should render to another, should never be forgotten during the exciting scenes of a criminal trial. If any attorney is dissatisfied with the charge of the court, for errors contained therein or omissions of important matters therefrom which should have been stated, the statutes provide ample remedies, rendering it unnecessary to resort to unseemly interruptions. In the first place additional instructions can be requested, as provided by section 266 of the Code of Criminal Procedure, or advantage may be taken of the error or omission on appeal as provided in section 300 of the same Code. There is nothing in the law which justifies such an interruption as is stated in the brief to have been made, on the trial of this case, to the trial judge while delivering the charge to the jury. But was it prejudicial error for the judge to make the remark attributed to him in reply to the interruption in the delivery of the charge? There is nothing in the record to show that the remark prejudiced, in any manner or degree, the case of the accused. The verdict found the defendant guilty it is true, but such a finding was fully warranted by the evidence. The jury could not fix the penalty and the court, whose province it was to do so, condemned the accused to a fine of $200 and two years' imprison-

ment, only twice the minimum term, when the maximum penalty prescribed by the law is 10 years or five times as great. If there had been any prejudice or unfairness on the part of the trial judge surely the term of imprisonment fixed would have been much longer.

Complaint is also made of the manner in which the judge summed up the evidence in his charge to the jury. Of course defendant's counsel may have looked on the proof from a different viewpoint to that taken by the court; but we see nothing unfair or improper in the comments made by the court upon the evidence. In many of the States the court is forbidden by the statutes to charge upon the weight of the evidence; but there is no such prohibition contained in our Codes. Indeed, under our statute the trial judge is required to "state the testimony and declare the law" to the jury. (Code Crim. Pro., section 233, paragraph 8, Rev. Stat. P. R., p. 674.) The courts in Porto Rico follow then, properly, the practice in the Federal Courts of the Union and instruct the jury how to proceed in reaching their conclusions from the evidence presented to them by the witnesses. When this is done judiciously the superior experience and knowledge of the court can be made a great benefit to the jury in their deliberations. In this case the jury were instructed that they, and not the court, must weigh the evidence, and determine the credibility of the witnesses, and that they should give the defendant the benefit of any reasonable doubt which might exist as to her guilt, and that she was presumed to be innocent until her guilt was established by competent evidence. Altogether the charge was fair and impartial and no reasonable complaint can be made of it by the accused. In considering objections to a charge, given in the trial court, we must take a general view of it and consider it as a whole. If, taken in its entirety, it is correct and clear, the mere fact that a particular passage or paragraph may state a proposition in general terms, without at the same time, and in immediate con-

nection therewith, giving all the exceptions thereto or quali-
fications to which it may be subject, if these modifications
appear elsewhere in the charge, it cannot be held to be errone-
ous. Such is the infirmity of human language that ideas can-
not be expressed in words like images in painting or statuary,
and one expression must follow another, in proper sequence,
until the whole view is presented. Taken altogether the
charge is fair and just and sufficiently expounds the law appli-
cable to the facts of the case; and there is nothing contained
therein which can warrant a reversal.

The court fully charged the jury in regard to the whole
case, and gave all the instructions asked for by defendant's
counsel, and we cannot see that any complaint properly lies
in defendant's mouth in regard to the instructions given by
the court to the jury.

Complaint is made that certain errors were committed in
the ruling of the trial court in regard to the admission and
exclusion of evidence. Let us first consider in this connection
the examination of the witness, Rossy, who was the *fiscal*
before whom the affidavit was made in which the perjury is
alleged to have occurred, and who is now the *fiscal* of this
court.

The first error assigned is that the trial judge erred in
refusing to allow the counsel for the accused to ask the wit-
ness, Rossy, on cross-examination what was the result of the
report which he had made to the Attorney General on the case
containing the affidavit made by the accused. The reason
given for this refusal was that the question was not pertinent,
there being nothing in the direct examination serving as a
basis for it. Great latitude is allowed a defendant in the
cross-examination of the prosecuting witness, but at the same
time the law allows the trial judge a wide discretion in the
conduct of the trial; and he must necessarily exercise control
in the examination of witnesses. By section 155 of the Law
of Evidence the opposite party is allowed to cross-examine

·the witness as to any facts stated in his direct examination or connected therewith. Applying the familiar maxim of construction *expressio unius est exclusio alterius,* it is plain that ·the cross-examination must be confined to the facts brought out on the direct examination. This precludes the. extension of the cross-examination to facts lying ·beyond these limits. It is true this statute is designated as an act to regulate the introduction of evidence· in civil cases; but it treats of the general principles of evidence, and many of its provisions are quite as applicable to criminal cases as to· civil ones. It is therefore proper to follow this statute in criminal cases when the same can be properly applied, and the court did not err in this case in so doing. In some of the States greater lati-· tude than this is allowed defendant's counsel in criminal cases on cross-examinations, but in most of them the rule is as here· stated, and the same that prevails in this Island.

The second error assigned in the defendant's brief is also based on the cross-examination of the *fiscal,* Rossy. Complaint is made that the witness should have been required to state in reply to the questions of the defense whether or not he, the *fiscal,* had declined the assistance of the defendant's counsel in the formulation and presentation of the original affidavit. This refers, it seems, to an information proposed to be presented against the notary. The trial judge declared the question irrelevant, and he was right. The answer, whatever it might have been, would not have tended to prove or disprove any issue made in the case on trial or any material fact connected therewith. The record should not have been encumbered with any such extrinsic matter. If the court had not exercised some control over the examination of witnesses, the enormously long record would probably have been still more unnecessarily prolonged.

The *fiscal,* Mr. Rossy, was also asked on cross-examination if he had thoroughly studied the signatures appearing in the protocol of the Notary Valdejulli. To this question the dis-

trict attorney objected because the witness had not been offered as an expert, and the court sustained the objection on the ground as it appears that the witness had been brought forward, by the district attorney, only to testify, as an official, as to what was before him when he presented his testimony under oath, and as this was the only point on which he was examined by the party who produced the witness, the question was therefore declared irrelevant. This ruling seems to have been based on section 155 of the Law of Evidence heretofore cited. It was, of course, a material matter to know whether or not the signature of the accused to the protocol mentioned was genuine or not, and a question propounded to any witness relating to that subject, on direct examination, should have been allowed. Any light which any witness could throw on that material point should have been permitted to shine. If the witness knew anything about this matter, whether he was an expert or not, the defendant was entitled to the benefit of it. But to avail the defendant of the testimony of this witness, if it were so desired, he should have been examined when called in behalf of the defense and the facts brought out on direct examination. This could easily have been done at a subsequent stage of the trial. But under the Law of Evidence, as heretofore quoted, this could not be done on cross-examination. The ruling of the court was proper and in accordance with the statute.

The fourth assignment involves the same matter as the foregoing, and the ruling in regard to it must be similar. It may sometimes occur that counsel, in the excitement of a trial and his zeal for his client, may persist in urging a point before the court to a greater extent than propriety may warrant; but it is the province of a judge, and his duty as well, to exercise great patience and forbearance in judicial proceedings, especially in criminal cases, remembering that it is the unfortunate prisoner who is on trial and not the attorney who is acting in his behalf. It may be possible that the record

does not fully show what the whole matter was on this point, but as far as it speaks there appears to have been no error.

The fifth assignment presents a similar question in regard to the cross-examination of the witness, Rafael Gutierrez, whom it was desired, for the accused, to cross-examine in regard to his relations with the notary Valdejulli, and the question propounded was excluded by the court. We are not shown what value there might be in the answer to the question which was put to the witness Rafael Gutierrez, upon the sort of confidence that a notary needs to have in a clerk, in order to allow him to write deeds; because, aside from the fact that it does not refer to the essential point submitted to the jury, it is a well-known rule that witnesses should testify only about facts, and, except in the case of experts, they are not permitted to express their opinions on matters even such as are pertinent to the issue, it being the duty of the jury to form an opinion if necessary upon the testimony which is presented before them. The opinions of witnesses on abstract matters are not generally admissible as testimony before the jury, and the court, on this principle, correctly excluded this question put on behalf of the defendant on the cross-examination of the witness Gutierrez.

It was sought to read in evidence the sworn testimony of the witness Osvaldo Fernández which had been given by him in the investigations made by the prosecuting attorney; and section 423 of the Code of Criminal Procedure is cited as authority for such a practice. This statute does not warrant the introduction of any such documents as testimony. It has reference only to depositions taken in a proper manner, before a Justice of the Peace, under a commission duly issued by the district court where the trial is pending. There is no merit in the claim made on behalf of the appellant that the trial court erred in excluding this testimony. No other ruling could properly have been made. In the absence of an important witness for the accused, without the fault of the defend-

ᴜnt, application might have been made for a suspension of the trial and an attachment for the witness to compel his attendance, and on a proper showing any necessary delay and all proper process would have been granted. If an error is committed in the conduct of a criminal case this does not justify the court in making a ruling which is not permitted by law in favor of the accused.

It is also objected on behalf of the accused that the trial court refused permission to read in evidence before the jury certain affidavits made before the notary, Palmer, by the witnesses Robertson and Fernández, who had since died. These affidavits were excluded from the evidence by the court because they were entirely *ex parte,* and taken in the absence of the district attorney, and without the opporuntity of cross-examination. The testimony of these witnesses was not preserved in accordance with the provisions of the statute law governing such cases and it was properly refused admission. This procedure is pointed out in detail and with great clearness in Chapter II of Title XI of the Code of Criminal Procedure, sections 414 to 424 inclusive. (See also on this point the case of *People of Porto Rico* v. *Simeon Reyes,* 10 P. R. Rep., 240.)

Where a question propounded to a witness is excluded by the trial court an exception may be taken to the ruling so made against the accused and unless this is done he is presumed to have acquiesced in the ruling and it will not be reviewed on appeal. Such was the case in regard to the question propounded to the notary Valdejulli as to what kind of acquaintance he had with Arcadio Fernández, one of the parties to the deed executed before the notary.

The oral argument of defendant's counsel was an able presentation of her defenses and, as it does not follow the brief very closely and was made by another member of the bar, the main points merit separate note and comment. Particular stress is laid on the remarks of the trial judge made to

the counsel of the accused when interrupted by him, while giving his instructions to the jury. This passage at arms between the court and counsel should not have occurred; but the effect of it upon the jury, if it had any effect, does not appear to have been injurious to the rights of the accused. And unless an error is prejudicial to such rights it forms no basis for a reversal of the case. (Code of Criminal Procedure, sec. 362.) This section of our code is identical with section 1258 of the Penal Code of California which was, in the year 1875, similarly construed. (*People* v. *Turley,* 50 Cal., 471.) On the contrary, this court is required by our statute to disregard all such errors. (See Sess. Acts, 1905, p. 10.)

Counsel in the oral argument also objected to the remarks made by the trial judge in his comments on the testimony of Father Fernández, a brother of the accused and a Jesuit priest. The observations criticised are to the effect that the jury should not take into account whether the witness was a Jesuit, or a priest, or a physician, or a lawyer; but only consider that he is a man; and that there are no classes before the court; only witnesses appear before the jury and the jury alone are the judges of the credibility of the witnesses. This instruction is correct and properly left the credibility of this witness, as well as all others, to be determined by the jury. His testimony was not directly in point, but it tended incidentally to support the theory of the defense that all the parties to the deed of compromise did not attend at the notary's office in Bayamón, on the 4th of July, 1895, and all acting together execute the instrument. In this way the testimony was pertinent and it was properly submitted to the jury and doubtless considered by them. There was no error in the instructions of which complaint was made in this particular. It was further contended in argument that the instrument, to which the contested signature was attached, being invalid for disregard of the notarial laws, there could be no perjury in denying under oath the making of the signature. In the affidavit made

by the accused, in which she denied the writing of the signature, it was a material matter whether or not she had so signed her own name, for if she had not some other person must have committed a forgery, whether the notarial laws had been complied with or not. The invalidity of the deed of compromise would not excuse the perjury if such crime had been committed. This branch of the oral argument is not well founded, and it must be disregarded.

Other points appear in the voluminous record which is before us, but as they are passed over in the brief, and escaped notice in the oral argument, and are really of minor importance, they may be considered as abandoned; but as far as they are presented they cannot induce a reversal of the judgment rendered in the court below.

Then taking the whole record together and examining it in connection with the extensive briefs of counsel on each side, and also carefully considering the very able oral arguments made at the hearing of the case, we are unable to discover any error incurred on the trial in the court below, demanding a reversal of the judgment of conviction rendered therein; and it must be affirmed.

*Affirmed.*

Justices Hernández, Figueras and Wolf concurred.

Mr. Chief Justice Quiñones did not sit at the hearing of this case.